[Civ. No. 814.   Third Appellate District.—February 2, 1911.]

KULLMAN, SALZ & CO., a Corporation, and ANSLEY K. SALZ, Individually and as Secretary of said Corporation, Petitioners, v. THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF SOLANO, and Hon. A. J. BUCKLES, Judge of said Superior Court, Respondents.

PROHIBITION—VOID PUNISHMENT FOR CONTEMPT—REFUSAL OF SECRETARY OF CORPORATION TO PRODUCE IMMATERIAL BOOKS—DIVORCE SUIT—OWNERSHIP OF STOCK.—Prohibition will lie to prevent execution of a void order punishing the secretary of a corporation for contempt for refusal to present immaterial books showing the profits received for several years, under a claim of the plaintiff in a divorce suit that her husband was a stockholder in the corporation, where the undisputed facts shown at the hearing were that the husband had long prior to the suit pledged his stock for unpaid notes, and that it had been sold at auction and passed to the purchaser, and was transferred in good faith on the books of the corporation to the purchaser two months before suit, and that the husband had no interest in the stock.

ID.—DIVORCE COMPLAINT ON INFORMATION AND BELIEF—HEARSAY—CONFLICT NOT RAISED.—The verified divorce complaint alleging facts "on information and belief," that the transfer by the defendant of his stock was fraudulent and consummated to defraud her rights, cannot be taken as to such averments as presenting anything more than hearsay testimony incompetent for the proof of a fact, and such averments cannot serve as the basis of a finding or raise a conflict.

ID.—SUBPOENA DUCES TECUM — OMNIBUS ORDER VOID. — A subpoena *duces tecum* embodying an omnibus order requiring the secretary of the corporation to bring into court all of the books and records and papers and documents belonging to the corporation, in the absence of a clear showing that they contained evidence material to the inquiry, would be absolutely void.

ID.—CONSTITUTIONAL LAW—SECURITY AGAINST UNNECESSARY SEIZURES. The right of the people to be secure against unreasonable and unnecessary seizure of their private papers and documents is guaranteed and safeguarded as to its perfect enjoyment by section 19 of article I of the constitution. No person should be forced to surrender his private books and papers to another who does not own or have any interest in them, except upon convincing proof that they contain evidence which materially affects the rights in litigation of the person demanding them.

ID.—CONDITIONS OF RIGHT TO EXAMINE A BOOK OR PAPER—MATERIALITY —SPECIFIC DESIGNATION.—It is not enough to entitle a party to examine a book or paper belonging to another that the party believes or is advised that it contains material evidence, but facts must be shown to support it. It must be made to appear by clear and unequivocal proof: 1. That such person has a book or paper or document containing evidence material to the issue before the court; 2. That the private book or paper or document containing such evidence be designated or so described that it may be identified. The last requisite is of prime importance, in view of the constitutional safeguard.

PETITION for writ of prohibition to the Superior Court of Solano County.  A. J. Buckles, Judge.

The facts are stated in the opinion of the court.

A. E. Shaw, for Petitioners.

D. McLeod, for Respondents.

HART, J.—This is an application for a writ of prohibition to restrain the respondents from causing to be executed

a judgment for contempt of court rendered by said respondents against the petitioner, Ansley K. Salz. The contention is, of course, that the action of the court in adjudging said petitioner guilty of contempt is in excess of the jurisdiction of respondents.

The petitioner, Kullman, Salz & Co., is a corporation, duly organized and existing under the laws of this state, and engaged in the business of manufacturing and selling leather and the products of leather, its tannery being located at Benicia, in the said county of Solano.

The petitioner, Ansley K. Salz, is the secretary of said corporation, Kullman, Salz & Co.

The petition discloses that the proceedings culminating in the order adjudging said petitioner guilty of contempt of court arose under the following circumstances: On the fifth day of October, 1910, one Jean McGregor Kullman instituted an action for divorce against her husband, Jacob Kullman, in the superior court of the county of Solano. The complaint in said action, in support of plaintiff's claim for an allowance for her own support and maintenance and for the support, maintenance and education of their minor child, aged about seven years, the only living issue of their marriage, alleged that Jacob Kullman was a man of large and ample means; that he not only received a salary of about $300 per month as an employee of the petitioner, Kullman, Salz & Co., but that he owned stock in said corporation of the value of about $250,000; that he "is also the owner of certain real estate of large value, situated in or near the city of Benicia, county of Solano," and, furthermore, owner of other property the character and value of which it is not necessary here to enumerate or specify. It is further alleged in said complaint that the defendants (in said action), Amalia Kullman and Herbert Kullman, mother and brother, respectively, of said Jacob Kullman, and the petitioner herein, Kullman, Salz & Co. (also made defendants in the action for divorce), "have entered into a combination and conspiracy and have colluded and conspired together with the object and purpose of taking away from said defendant, Jacob Kullman, and of concealing and covering up all his property, so that the plaintiff will not be able to obtain for herself and her minor child substantial support and maintenance." In furtherance of the

object of said conspiracy, it is alleged in said complaint, the mother of Jacob, on the sixteenth day of September, 1910, brought an action in the superior court of Solano county against said Jacob upon three promissory notes, aggregating in amount the sum of $24,000; that an attachment was issued in said action and levied on certain property of said Jacob; that said Jacob made no appearance in said action, but allowed judgment to be taken against him therein by default; that the shares of stock of said Jacob in the corporation petitioner herein were at approximately the same time transferred to some other person or persons upon a pretended sale thereof, and that all said transactions were not *bona fide*, but consummated only for the purpose of preventing plaintiff in said action for divorce from securing a just and suitable allowance for herself and the minor child of the parties.

Upon the filing of the complaint in said action for divorce the court made an order commanding the defendants to appear before the court on the fifteenth day of October, 1910, to show cause why an order should not be made appointing a receiver of and for all the property of the said Jacob Kullman, including the stock which it was alleged that he was still the owner of in the corporation petitioner, and restraining in the meantime any sale or disposition of any said property. An order was also made at the same time requiring the defendants to appear in court on the same day that the former order was to be heard to show cause why a temporary injunction, restraining the defendants from selling, transferring, or in any manner disposing of or dealing with the property belonging to Jacob Kullman and referred to in said complaint, should not be granted.

It is alleged in the petition herein that, on the eighteenth day of November, 1910, the petitioner, Kullman, Salz & Co., filed its amended answer to the said action of Jean McGregor Kullman for a divorce, and in said answer "alleged that it had, on the tenth day of September, 1910, and long prior to the commencement of said action, so pending in Solano county, and before the service of said or any restraining order and upon the presentation of certificates duly indorsed and showing the sale, at public auction, of all interest of said Jacob Kullman therein, canceled certificate 209 for nineteen hundred shares of the capital stock of said corporation, and had

issued in place thereof its certificate No. 210 to one Amalia Kullman for said 1900 shares of its capital stock,'' etc. Further answering said complaint, said corporation alleged that Jacob Kullman, at the time of the commencement of the suit for divorce by his wife, ''did not own, nor has he at any time since owned any stock of this defendant corporation standing upon the books of the same in his name,'' and denied the existence or prosecution of any conspiracy or collusion ''with said other defendants in said action, or any of them, or with any person whomsoever,'' as charged in said complaint.

An order having been made commanding the defendant, Jacob Kullman, to appear before the respondents on the nineteenth day of November, 1910, to show cause why he should not pay the plaintiff alimony *pendente lite* and certain moneys for costs and counsel fees in said action, a subpoena *duces tecum* was, on the eighteenth day of November, 1910, served on the petitioner, Ansley K. Salz, requiring him to appear before the respondents on said nineteenth day of November, and further commanding him to ''bring with him all books of account of Kullman, Salz & Co., a corporation, and the Benicia Water Works, a corporation (Jacob Kullman was the secretary of the last-named corporation), including all stockbooks and inventories, all cash-books, all ledgers, all journals, all trial balances during the years 1909 and 1910, all books, documents and papers, showing bills receivable and bills payable by said corporations, and the value of the shares of stock of said corporations and the value of the interest of the defendant, Jacob Kullman, in said corporations.''

On the nineteenth day of November, 1910, the hearing on the order directed to Jacob Kullman to show cause why he should not pay to the plaintiff in said action alimony *pendente lite*, etc., came up for hearing before the respondents, and it was in this proceeding that the petitioner, Ansley K. Salz, having been sworn as a witness and refused to produce a certain book called for by counsel for the plaintiff in the divorce suit, was, for such refusal, adjudged guilty by the respondents of contempt of court, to interdict the execution of which judgment is the purpose of the present proceeding.

All the testimony taken on that hearing is before this court, having been made a part of the petition herein. This testimony is all one way, no material fact to which it relates being

controverted. It is true that plaintiff's verified complaint contains averments, "on information and belief," that the several transactions resulting in the transfer by defendant of his property and the sale of his stock in the corporation petitioner to his mother were fraudulent and so consummated in view of contemplated divorce proceedings for the purpose of defeating plaintiff's claim and right to alimony. But, obviously, statements in a pleading or an affidavit or deposition upon "information and belief" are no more to be accepted as evidence in a trial of an issue of fact than if they were orally made. They can amount to no more than mere hearsay testimony, incompetent for the proof of a fact, and, therefore, cannot serve as the basis for a finding or raise a conflict. Therefore, as stated, the testimony taken at the hearing shows without dispute that the stock which had been owned by Jacob Kullman in the corporation petitioner was, some weeks prior to the date of the commencement of the action for divorce, sold, at public auction, to the mother of Jacob, said stock having been previously pledged to Mrs. Kullman for the purpose of securing the payment of certain promissory notes executed to her by Jacob. The certificate of said stock in the name of Jacob was, as we have seen from the allegations of the petition, canceled by the corporation, and in lieu thereof a certificate of the same stock issued to his mother.

At the hearing, the petition alleges, the petitioner, Ansley K. Salz, was sworn as a witness and questioned concerning the alleged ownership of certain stock in the corporation petitioner by Jacob Kullman. Among other questions, Salz was asked whether, as secretary of the corporation, Kullman, Salz & Co., he had the custody of or under his control any book "which shows upon its face the profits earned by Kullman, Salz & Co. during the last few years, say, five years," and, upon replying that he had "such records," was asked to produce the same. At this point an objection was interposed by the attorney for the corporation to the production by the witness of any book or record disclosing the profits of the concern during the period mentioned, on the ground that any information with regard to the profits earned by said corporation during that or any period of time would not be relevant or material to any issue before the court, it having been indisputably shown that Jacob Kullman no longer owned any

stock in said corporation. The court overruled the objection and ordered the witness to produce the record called for, but the witness, by and on the advice of the attorney for the corporation, refused to produce the book or record containing the information specifically asked for by the question and the demand of counsel for plaintiff, and the court thereupon adjudged the witness, for such refusal, to be in contempt of court.

The foregoing, so far as we are advised by the record before us, represents a brief but correct statement of the entire record on which the respondents adjudged the petitioner, Salz, in contempt of court.

It is alleged in the petition that Salz was ordered "by the judge of said court to produce said books, and all thereof, and all papers and documents belonging to said corporation, and to permit the same to be examined in open court and to be made a part of the records of said court." It is true that the court ordered, by its subpoena *duces tecum*, all the books, records, etc., referred to in the petition, to be brought into court, but this order was made prior to the reception or hearing of any evidence, there then being nothing before the court but the dubious evidence furnished by the allegations of plaintiff's complaint, on information and belief, as to the materiality of said books, records, etc. The only order which we have been able to find in the record requiring the petitioner to produce and subject to examination and inspection by the court any book or record is the one to which we have adverted as compelling the production of the book or record disclosing the profits earned in past years by the corporation, and which the petitioner, Salz, refused to obey, and, as we are of opinion that the court, under the showing made, was without authority to compel the witness to produce for examination by the court said book or record, it is manifestly not material to the inquiry here whether or not the witness responded to the subpoena *duces tecum* by bringing into court all the books, papers, documents, etc., mentioned in the petition as having been thus called for. It may be stated that it does not appear that he did bring into court all the books and documents required by the subpoena, and it may be added that such an omnibus order for private books and papers, in the absence of a clear show-

ing that they contained evidence material to the inquiry, would have been absolutely void.

However, a demurrer was interposed to the petition by the respondents and at the same time an answer to said petition was presented for filing and to be filed only in the event that the demurrer was overruled. It was stipulated between counsel that, in case of the overruling of the demurrer and the filing of the answer or return to the writ, the petitioners might be permitted to interpose a traverse to said answer or return. But, although the answer denies, upon information and belief, all the averments of the petition, it nevertheless admits that the petition contains a correct statement of the proceedings, including the testimony taken on the hearing in which the judgment for contempt against Salz was rendered. The answer declares, in this regard: "Said respondents, in this behalf, allege that the facts brought forth on said hearing are set forth in the transcript of testimony taken at said hearing, a copy of which is annexed to and made a part of the petition on file herein."

It will thus be observed that, under our view of the case as to the point submitted here for decision, there is, in fact, nothing in the answer which could tender an issue of fact material or necessary to the determination of the controversy here. In other words, the admission of the answer that the petition contains a correct statement of the proceedings culminating in the order or judgment, enforcement of which is here sought to be restrained, leaves no question of fact, vital to the decision on this writ, to be traversed by petitioner or to be considered and determined by this court. We, therefore, deem it not only the more expeditious course, but proper, to consider the answer as filed for the purpose of disclosing the admission referred to, the consequence of which is, manifestly, that the important averments of the petition stand before this court admitted both by the answer and demurrer, the latter further admitting for the purposes of this decision the truth of said averments.

The sole question, then, which is submitted for solution here is: Did the respondents, under the circumstances as disclosed by the petition, exceed their jurisdiction by their order or judgment adjudging Ansley K. Salz guilty of a contumacious violation of their order requiring him to produce in court,

to be used as evidence, a book or record disclosing the profits of the corporation petitioner for the five years or for any time prior to the time at which such information was thus asked for?

It seems to us that there can be but one answer to this question. It must be kept in mind that counsel for the plaintiff called for the production of no book or record that would show or tend to show that Jacob Kullman still owned stock or had any other interest in Kullman, Salz & Co. It may here be remarked that if such book or record had been shown to exist and to be in the possession or custody of the witness as the secretary of the corporation, or that there existed and was in the custody of the corporation a book or record showing, or tending to show, that the charge of fraud in the transfer and disposition of Jacob's stock in said corporation was true, and the same had been sufficiently identified, and had been ordered by the court to be produced as evidence in this inquiry, we doubt not that a refusal to produce such book or record under the indicated circumstances would have laid the foundation for an unimpeachable judgment or order adjudging the witness in contempt of court. But the book or record called for and specifically designated by counsel for plaintiff, the refusal to produce which brought upon Salz the judgment for contempt, was the book or record which would disclose the profits only of a corporation in which the testimony, without conflict, shows that Jacob Kullman then held no stock or had no interest of whatsoever nature other than that of a mere employee. There was introduced before the court, as seen, no evidence whatsoever from which the court would have been justified in finding that Jacob Kullman owned any stock or had any interest, except as an employee, in the corporation, and the proposition certainly will not be disputed that, before the court could acquire any authority to order the production of books disclosing the profits earned by the concern or any other of its affairs, there must have been previously produced some evidence of which said order could properly be predicated—that is, evidence warranting a finding that the defendant in the divorce action owned stock or was otherwise so interested in the corporation as to entitle him to share in the profits thereof. As we have shown and before declared, there is absolutely no such evidence in the record. It follows, there-

fore, that, no showing having been made that the book or record specifically called for by counsel for plaintiff and ordered to be produced by the court contained any evidence material to the issue on trial before the court, the order requiring the production of the same was beyond the jurisdiction of respondents, and, consequently, void.

The right of the people to be secure against unreasonable or unnecessary seizure of their private papers and documents is justly regarded as a highly sacred one—so much so, in fact, that the people themselves have taken the pains in express written terms to guarantee and safeguard its perfect enjoyment. (Const., art. I, sec. 19.) In no case, therefore, should a person be forced to surrender his private books and papers to another who does not claim to own or have any interest in them except upon convincing proof that such books or papers contain evidence which materially affects the rights in litigation of the person demanding them. As was so clearly and forcefully said by the late learned Justice McFarland, in the case of *Ex parte Clarke,* 126 Cal. 238, [77 Am. St. Rep. 176, 58 Pac. 546, 46 L. R. A. 835], "to compel a person to deliver his books and papers to another who does not claim any ownership in them is to violate the sanctity of most important private rights, and is not to be tolerated except when warranted by some law clearly not inconsistent with the constitutional provision."

The petition alleges that in the business in which the corporation petitioner is engaged there is extensive competition, and that the exposure to the public of the books or records disclosing its profits would result in great and irreparable damage to the corporation and its stockholders. It is readily perceivable how such a result might follow the disclosure of the profits and specific sources thereof earned by a concern operated on an extensive scale in lively rivalry with other concerns engaged in like business. Such a book or record might expose its methods of business—methods which, legitimately pursued, and being of its own invention, have contributed largely to the successful and profitable prosecution of its business. In *Ex parte Clarke,* 126 Cal. 238, [77 Am. St. Rep. 176, 58 Pac. 546, 46 L. R. A. 835], the court further say: "The privacy of private books and papers is not only of inestimable value to the owner on account of various per-

sonal and sentimental reasons, but is of the greatest value also from mere business considerations; the exposure of a man's method of business would frequently be highly injurious to him, and, although really solvent, might produce such embarrassments as would ruin him. His right, therefore, to the sole possession and knowledge of his private books and papers is not to be violated, except where the power to do so clearly appears.''

We do not, of course, intend to be understood as saying that there is no power in the court to compel the production of private books and papers, or that such power is inconsistent with the constitutional provision, for ''when a witness is in court, no matter how brought there, and discloses the fact that he has a paper, document, or book which would be evidence in favor of the party desiring it, he may, in a proper case, be rightfully ordered to produce it.'' (*Ex parte Clarke,* 126 Cal. 238, [77 Am. St. Rep. 176, 58 Pac. 546, 46 L. R. A. 835].) But what we do intend to say is that such power can be exercised by the court only where the facts clearly and without question warrant it, and that such facts must be produced, manifestly, only through the instrumentality of competent and not hearsay evidence. Nor is it enough, as is said by the court in *Morrison* v. *Sturges,* 26 How. Pr. (N. Y.) 179, ''that the party believes or is advised that the paper contains material evidence. Facts must be shown to support it.''

There are, in other words, two essential facts which must be made to appear by clear and unequivocal proof as a condition precedent to the right of a court to require a person to deliver up for examination by a court his private books and papers, viz.: 1. That such person has a book or paper or document containing evidence material to the issue before the court; 2. That the precise book or paper or document containing such evidence be designated or so described as that it may be identified. The last-mentioned requisite is, in point of importance, equal with or, if there be any difference, paramount to the first, for, however much proof may be adduced of the materiality of the evidence, the constitutional right of people to be protected against the unlawful seizure of their private documents forecloses authority in the courts to order a general or indiscriminate ransacking of one's private books,

papers and documents as the means for locating the desired evidence.

Our conclusion is, as must be apparent from the views expressed in the foregoing, that the order or judgment adjudging the petitioner, Ansley K. Salz, guilty of contempt of the order of the court was *coram non judice,* and is, therefore, nonenforceable.

Let a peremptory writ issue.

Burnett, J., and Chipman, P. J., concurred.